UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | |
| | ) | No.:1:11-CR-115 |
| | ) | |
| KENDRICK MARSHALL RAY | ) | Mattice/Carter |

REPORT AND RECOMMENDATION

I. Introduction

Defendant Kendrick Marshall Ray's motion to suppress evidence, i.e. a firearm and bullets, seized from his residence [Doc. 17] is before the undersigned Magistrate Judge having been referred for a report and recommendation by the District Court pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C). Defendant is charged with being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g) and possession of a stolen firearm in violation of 18 U.S.C. § 922(j). Because I conclude that defendant gave his consent to police to enter his residence to retrieve the firearm at issue, it is RECOMMENDED that defendant's motion to suppress be DENIED.

II. Relevant Facts

An evidentiary hearing was held before the undersigned Magistrate Judge on February 27, 2012. Only the government presented witnesses: Investigator Larry Lockmiller of the Chattanooga Police Department (CPD), Sgt. Rebecca Shelton of the CPD property crimes division, and CPD Patrol Officer Lewis Davis. I observed their demeanor and found each of them to be credible.

1

On the afternoon of September 8, 2011, Sgt. Jerri Weary, CPD public information officer, contacted Sgt. Shelton and informed her that she (Weary) had received a phone call from one Robin McDonald who told her she (McDonald) had heard her daughter's boyfriend, the defendant, bragging that he had recently robbed a house in Hixson and had the stolen property stored in a duplex located at 2707 E. 44th Street in Chattanooga (herein after referred to as "the duplex.") McDonald stated she was the leasee of the duplex, but she was currently living in Soddy Daisy and was allowing her daughter, who was not on the lease, to live in the duplex with the defendant. McDonald further stated there were outstanding warrants for defendant's arrest, and she wanted the police to remove defendant from the duplex. After receiving this information from Sgt. Weary, Shelton phoned McDonald and asked her if she would meet her at the duplex and give consent to search the duplex. McDonald said she would come to the duplex and give her consent to search it. After this conversation, Shelton confirmed that defendant had outstanding arrest warrants including one for a probation violation. Then Shelton, Investigator Larry Lockmiller, and Officers Chad Rowe, Robin Davenport, Wilbur McLean, and Gains proceeded to the duplex.

When they arrived at the duplex late on the afternoon of September 8, 2011, Shelton phoned McDonald who said she would be there in about an hour to give consent to search the duplex. Then Shelton went to the front door, knocked, and announced herself as a police officer. The other officers went to a side door and waited. At first no-one came to the door, but Shelton continued knocking because she could hear stirring around in the house. Eventually, Heather Hicks, Robin McDonald's daughter, came to the door. Hicks denied defendant was in the duplex and proceeded to make a phone call while standing on the front porch. Shelton did not believe Hicks because she could still hear some movement inside the house. Shelton instructed Hicks to

2

hang up the phone. Hicks stated to Shelton that only her mother, not she, was on the lease for the apartment. Shelton did not ask Hicks for consent to come inside and or to search the duplex.

While Shelton was talking with Hicks, the defendant tried to exit the duplex by way of the side door where the other officers arrested him, placed him in cuffs, and had him sit on the concrete stoop at the side door.

In the meantime, Ms. Hicks was having a shouting match with another woman living across the street with her child who was fathered by the defendant. Shelton was occupied ensuring that the two women were kept separate. Shelton testified that she did not ask Hicks for consent to search the duplex.

Shortly after defendant was arrested, Officer Lewis Davis arrived at the scene, and he went to the side door where the defendant was sitting, in no apparent distress or discomfort. Defendant asked if he could go back inside to get his shoes. Defendant was told he could not go back inside but one of the officers would go get his shoes for him if he wanted them to do so. The defendant stated he did and one of the officers went inside to retrieve his shoes. Neither Lockmiller nor Davis could remember which officer retrieved the shoes, but it was not one of them. The officer who had retrieved the shoes came back outside with a pair of high top athletic shoes. There was a gun holster in plain sight in one of the shoes.

When Davis saw the holster, he immediately gave defendant his Miranda rights and asked defendant if he understood them and if he would talk to him. Defendant stated he did and he would. Davis asked defendant if there was a gun in the house and if so, where was it? Defendant conceded there was a gun in the house located in a kitchen cabinet. Davis testified at the evidentiary hearing that he remembers giving defendant his Miranda rights and asking about the gun but he did not remember whether he asked defendant for consent to go inside the house

3

and retrieve the gun. Lockmiller, however, specifically testified that Davis told him at the scene before they entered the duplex to get the gun, that the defendant had given consent for the officers to go inside the house to retrieve the gun. Lockmiller also testified he was trying to keep an eye on the two women shouting back and forth at each other from opposite sides of the street and therefore did not personally observe or hear the exchange between Davis and defendant just after defendant's shoes were brought to the defendant. About a month after September 8, 2011, CPD Officer Phillip Larramore emailed Davis to ask if the defendant had given him (Davis) consent to enter the duplex to obtain the gun. Davis responded, "consent was given to retrieve the firearm after telling me where it was located…." (Gov. Ex. 9).

After Davis informed Lockmiller there was a gun in the house, in a kitchen cabinet, and defendant had given them permission to retrieve it, Lockmiller went to his vehicle to obtain his camera. When he returned, he and Davis entered the house to retrieve the gun. To get to the kitchen, they had to walk through a very small living room and past the open trash can in the kitchen. The officers saw and confiscated a baggy with a small amount of marijuana and a baggy of bullets in plain sight in the trash. They also found the gun under the cabinet where defendant said it would be. They did not continue to search but instead exited the duplex.

Thereafter, Davis drove defendant to the police service station, and Robin McDonald arrived. McDonald signed a written consent to search form and the duplex was searched.

While defendant was being detained, one of the officers pointed out to Davis a ring that defendant was wearing. The officer suspected it was stolen. After Davis had transported the defendant to the police service center, he noticed defendant was no longer wearing the ring. He returned to the police service center parking lot and found the ring on the ground in the parking lot.

4

III. Analysis

It is settled law that consent to search is a permissible exception to the Fourth Amendment's warrant requirement. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973); *United States v. Moon,* 513 F.3d 527, 537 (6th Cir. 2008); *United States v. Ivy*, 165 F.3d 397, 401 (6th Cir.1998). When police have conducted a warrantless search pursuant to the consent of the defendant, the government has the burden to prove such consent was valid by a preponderance of the evidence using clear and positive testimony. *United States v. Beauchamp*, 659 F.3d 560, 571 (6th Cir. 2011); *United States v. Henry*, 429 F.3d 603, 615 n. 16 (6th Cir. 2005); *see also, United States v. McCauley*, 548 F.3d 440, 446 (6th Cir. 2008); *United States v. Haynes*, 301 F.3d at 669, 682 (6th Cir. 2002). To validly waive the rights secured by the Fourth Amendment, consent must be free and voluntary. *Schneckloth,* 412 U.S. at 222; *Beauchamp*, 659 F.3d at 571; *Moon*, 513 F.3d at 537; *Ivy*, 165 F.3d at 401. Further, it must be an "understanding and intentional waiver" rather than merely "granted in submission to authority." *Johnson v. United States*, 333 U.S. 10, 13 (1948); *see also United States v. Ayoub*, 498 F.3d 532, 542 ("To justify a search by consent, the government must prove by clear and positive testimony that the asserted consent was voluntary and unequivocally, specifically, and intelligently given.") (internal citation omitted). "[W]hether a consent to a search was in fact 'voluntary' or was the product of duress or coercion . . . is a question of fact to be determined from the totality of all the circumstances." *Schneckloth*, 412 U.S. at 227; *accord Ohio v. Robinette*, 519 U.S. 33, 39 (1996); *McCauley*, 548 F.3d at 446. Factors to be considered when examining the totality of the circumstances include: "the age, intelligence, and education of the individual; whether the individual understands the right to

5

refuse to consent; whether the individual understands his or her constitutional rights; the length and nature of detention; and the use of coercive or punishing conduct by the police." *United States v. Worley*, 193 F.3d 380, 386 (1999); *see also*, *Center for Bio-Ethical Reform, Inc. v. City of Springboro*, 477 F.3d 807, 830 (6th Cir. 2007); *Haynes*, 301 F.3d at 682 n. 6.

The defendant challenges the search of the duplex which resulted in the recovery of a gun, ammunition, and marijuana on the ground that Robin McDonald did not have authority to give consent to search the duplex. However, it is not necessary to address that issue if the undersigned concludes that defendant gave consent to come inside the duplex to retrieve the gun.

At the February 27, 2012, evidentiary hearing, approximately six months after the incident in question, Officer Davis could not remember whether the defendant expressly told him he could go in the kitchen to retrieve the gun. At first blush, this failure in memory seems a bit odd. However, there is ample evidence to convince me defendant did give Davis permission to enter the duplex to retrieve the gun.

First, Investigator Larry Lockmiller testified unequivocally that Davis told him at the scene before entering the house to retrieve the gun that defendant had given them permission to go inside to secure the gun. Second, a month after the incident, Davis informed CPD Officer Phillip Narramore that "consent was given to retrieve the firearm after telling me where it was located…" (Gov. Ex. 9). Third, Lockmiller testified that before he and Davis went inside to retrieve the gun, Davis informed him (Lockmiller) that defendant had said the gun was in the kitchen under the cabinet. Lockmiller also testified that he and Davis walked directly to this location where they found the gun, a fact which corroborates Davis' statement to Lockmiller that defendant had told him where the gun was and had given them consent to go inside and fetch it. Fourth, the undersigned finds it highly improbable that the defendant would have told Davis

6

where the gun was if he did not also give him consent to go get it. Fifth, in further support of a finding that defendant did give his consent, the undersigned notes that there was no evidence given at the hearing to contradict Lockmiller's testimony that defendant had given Davis consent to enter the duplex to retrieve the gun. And finally, defendant did not object to the officers' entry into the home. Looking at all these factors as a whole, the undersigned concludes defendant did give Davis consent to go into the kitchen to retrieve the gun.

As to whether the consent was voluntary, the undersigned observes that defendant is an adult, has had previous experience with police and is doubtless familiar with his rights. Moreover, Davis gave the defendant his Miranda rights and defendant said he understood them before defendant gave his consent to retrieve the gun. Further, there was no coercion on the part of the police, and defendant himself was not in distress as he sat on the stoop. Thus, the undersigned concludes defendant's consent was voluntarily and knowingly given and that entry into the duplex to retrieve the gun did not violate the defendant's Fourth Amendment rights.

As to the baggy of ammunition and baggy of marijuana, when Davis and Lewis went into the kitchen with defendant's permission to retrieve the gun, they saw the ammunition and marijuana in plain view on top of the trash. The plain view doctrine permits warrantless seizures of property where: (1) the officer was lawfully in a position from which the object was plainly seen; (2) the object was in plain view; (3) the object's incriminating nature was immediately apparent; and (4) the officer had a lawful right of access to the object. *Horton v. California*, 496 U.S. 128, 134 (1990). These there requirements are met and therefore the ammunition and marijuana was properly seized under the plain view doctrine.

## IV. Conclusion

Because Officers Davis and Lockmiller had defendant's consent to enter his residence to secure the gun and because the ammunition and marijuana were in plain view when the officers entered the residence to secure the gun, the undersigned concludes the defendant's Fourth Amendment rights were not violated, and it is RECOMMENDED[1] this motion to suppress be DENIED.

S/*William B. Mitchell Carter*
UNITED STATES MAGISTRATE JUDGE

---

[1] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 59(b)(2) of the Federal Rules of Criminal Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 88 L.Ed.2d 435, 106 S. Ct. 466 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive or general. *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370 (6th Cir. 1987).